GORDON *v.* GREAT LAKES BOWLING CORPORATION

1. CONTRACTS—PERFORMANCE—SUBSTANTIAL PERFORMANCE—DEFINITION.

> The concept of what constitutes "substantial performance" of a contract is a relative one, the extent of nonperformance being viewed in relation to the full performance promised.

2. CONTRACTS — PERFORMANCE — SUBSTANTIAL PERFORMANCE — LEASE AGREEMENT.

> The doctrine of substantial performance may properly be applied to lease agreements, and therefore the trial court's instruction to the jury that it could find defendant liable for rent under a lease agreement, if it found that plaintiff had substantially performed its obligations under the lease agreement, was not erroneous.

3. CONTRACTS — PERFORMANCE — SUBSTANTIAL PERFORMANCE — JURY QUESTION.

> The questions of whether and when substantial performance of a contract took place are questions of fact to be determined by the jury.

4. CONTRACTS—BUILDING CONSTRUCTION—SEWER SYSTEM—EXTENSION.

> A general building contract expressly providing for a "complete" sanitary sewer system and for "sanitary sewer connections from building to sanitary sewer" includes all necessary extensions off the land to connect to the sanitary sewer and is not limited to "onsite" construction.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 17 Am Jur 2d, Contracts § 375 *et seq.*
[3] 17 Am Jur 2d, Contracts § 378.
[4, 5] 13 Am Jur 2d, Building and Construction Contracts § 8 *et seq.*
[6] 13 Am Jur 2d, Building and Construction Contracts § 124.
Admissibility of oral agreement as to specific time for performance where written contract is silent. 85 ALR2d 1269.

5. CONTRACTS—BUILDING CONSTRUCTION—STORM DRAINAGE SYSTEM
—EXTENT OF SYSTEM.

A general building construction contract providing for a "complete storm drainage system" includes all necessary extensions off the land to conduct rainwater away and is not limited to "onsite" piping.

6. CONTRACTS — WRITTEN INSTRUMENT — TIME FOR COMPLETION — PAROL EVIDENCE—ADMISSIBILITY.

Parol evidence is not admissible to show time of performance of a contract where the written contract is complete and unambiguous but does not mention time of completion, because a reasonable time is presumed.

Appeal from Wayne, Benjamin Burdick, J. Submitted Division 1 February 6, 1969, at Detroit. (Docket No. 3,693.) Decided July 29, 1969.

Declaration by Harold H. Gordon, Marion Gordon, Louis P. Begin, and Gita M. Begin against Great Lakes Bowling Corporation, a Michigan corporation, and Cloverlanes Bowl, Inc., a Michigan corporation, for money due under a lease. Verdict and judgment for plaintiffs. Defendants appeal. Affirmed in part and reversed in part.

*Louisell & Barris* (*Robert H. Harkness,* of counsel), for plaintiffs.

*Chris M. Youngjohn,* for defendants.

Before: LESINSKI, C. J., and T. M. BURNS and J. J. KELLEY,* JJ.

LESINSKI, C. J. On August 20, 1959, plaintiffs, landlords, entered into a written 20-year lease with defendant, tenant, Great Lakes Bowling Corporation. The lease provided in relevant part that the

---

ʸ Circuit Judge, sitting on the Court of Appeals by assignment.

landlords would erect on the demised premises a building sufficient to house a 64-lane bowling establishment and a parking lot with proper drainage facilities, both according to "plans and specifications to be approved by tenant". The tenant was obligated by the lease to furnish bowling alley equipment.

The lease contained an agreement by the parties that the landlords would not be required to invest more than $540,000 for construction of the building and parking lot, and that the tenant would pay the cost of construction in excess of $540,000. Construction costs specifically were to include "any other costs attributable to the improvement of the herein described premises".

Pursuant to the lease, plans and specifications for the project were prepared by architects and approved by the tenant. When the general contract for the project was let for $557,900, defendants acknowledged their liability for $17,900, the excess over $540,000.

In addition to the admitted $17,900 liability, plaintiffs claimed their tenants also owed another $56,170.70. To recover that amount, plaintiffs instituted an action in Wayne county circuit court. A jury trial was held in which each party prevailed in part. Defendants now appeal portions of the judgment; plaintiffs do not cross-appeal.

Defendants first contend the trial court erred in failing to direct a verdict for defendants on plaintiffs' claim for rent.

The lease in relevant part provided:

"This lease shall commence on the date upon which the building and parking lot required to be constructed under * * * this lease shall have been fully completed and the tenant shall have in-

stalled his entire equipment necessary for the operation of a bowling alley, but in no event shall such lease commence later than 30 days after the full and final completion of the building and parking lot."

Stipulated rent under the lease was $5,333.33 per month.

Plaintiffs contend that the project was substantially completed for purposes of the lease by December 23, 1960. Therefore, plaintiffs seek payment of $12,266 under the lease for rent commencing 30 days after December 23, 1960, and ending April 1, 1961. Defendants voluntarily paid rent for the period beginning April 1, 1961.

Defendants refute plaintiffs' claims, contending that since bowling operations could not be commenced until after April 1, 1961, no rent was due under the lease for the prior period.

The jury awarded plaintiffs $6,133 for rent, which was one-half the rent claimed owing by plaintiffs.

As part of defendants' appeal on the rent issue, they assert that the trial court erred in instructing the jury that the doctrine of "substantial performance", which is applied in building and construction contracts, applies to lease arrangements. The instruction provided:

"I might also say while I am on the subject that it is a question of fact for your determination as to whether or not Mr. Brown's refusal to accept the building on December 23, 1960, was arbitrary, and whether or not the plaintiffs had substantially performed or fulfilled their contract on that date.

"Now, let me tell you what constitutes 'substantial performance'. While it is difficult to state what the term 'substantial performance' or 'substantial compliance' as applied to building and construction contracts means, inasmuch as the term is a relative one, and the extent of the nonperformance must be

viewed with relation to the full performance promised, it may be stated generally that there is substantial performance of such a contract when all the essentials necessary to the full accomplishment of the purposes for which the thing contracted has been constructed or performed with such approximation to complete the performance that the owner obtains substantially what is called for by the contract.

"Imperfections in the matters of detail which do not constitute a deviation from the general plan contemplated for the work, do not enter into the substance of a contract and may be compensated in damages; do not prevent the performance as being regarded as substantial performance."

This Court in *P & M Construction Company, Inc. v. Hammond Ventures, Inc.* (1966), 3 Mich App 306, 314, 315, approved an almost identical "substantial performance" rule in a suit between a property owner and a contractor. Therefore, the instruction in the instant case was not in error if the "substantial performance" test applies to tenants.

While defendants contend the "substantial performance" test is inapplicable to tenants, they cite no case to support that contention. However, in *Weissberger* v. *Brown-Bellows-Smith, Inc.* (Tex Civ App, 1956), 289 SW2d 813, the substantial performance test was expressly applied to a lease arrangement requiring a landlord to construct a building for occupancy by tenants. There the tenant claimed the landlord breached the leasing agreement through noncompliance and nonperformance in that the plaster was wet, certain air conditioning ducts had to be moved, and certain lighting fixtures had to be installed. The court in examining the evidence, concluded that substantial performance was established and that such performance is regarded as full performance of a building contract.

Similarly, in *Noble* v. *Tweedy* (1949), 90 Cal App 2d 738 (203 P2d 778), the court applied the "substantial performance" test to a lessor's duty to erect a bowling alley for his tenant on lessor's premises in accordance with agreed plans and specifications. See, also, 17 Am Jur 2d, Contracts, § 375.

The instructions in the case at bar indicated that the "substantial performance" rule is a relative one, the extent of nonperformance being viewed in relation to the full performance promised. By this instruction, the jury was cautioned to examine the entire lease between landlord and tenant to determine whether, by the standards of the lease, the landlord had substantially performed. No general "substantial performance" test was applied; rather, performance in relation to the lease was the test expressed by the trial court. We find that the "substantial performance" instruction given by the trial court was properly applied to the lease arrangement in the instant case. There was no error in the trial court's instruction to the jury regarding the issue.

As part of defendants' contention of trial court error concerning the claim for rent, defendants further urge that they should have received a directed verdict because no rent was due under the lease until April 1, 1961.

Neither party denies that on December 23, 1960, items still incomplete included the indoor sprinkler system, asphalt tile floor, painting and vinyl work, installation of the lawn, a screening wall on the property line, parking lot striping and lighting islands, lattice grill work, and walls in back of the snack bar, between the control desk and checkroom, and in the cocktail lounge and playroom. On April 12, 1961, the following items were still incomplete: curbing around light posts in parking lot, sod on

lawn, ceiling of concourse, screening wall on property line, painting and general clean-up.

Under the "substantial performance" test, the exact date the lease was to commence was a question of fact to be determined by the jury. The jury, in awarding one-half of the rent plaintiffs alleged owing, presumably determined that "substantial performance" occurred as of January 25, 1961, and therefore that rental payments should have begun as of February 24, 1961. Upon a review of the record, we concur in the jury's determination. The trial court did not err in refusing to direct a verdict for defendants.

Defendants also contend, in two related issues, that the trial judge erred in refusing to direct a verdict for defendants on plaintiffs' claim for the cost of extension of the storm and sanitary sewers beyond the demised land. Plaintiffs claimed that the $557,900 general contract included only "on site" drainage, and that extension of the sewage system beyond the demised premises was an improvement of the premises in excess of the contract price and chargeable to the defendants under the terms of the lease. Defendants asserted that the general contract included in its $557,900 amount the cost of necessary extensions, and that no further payment is due for the extensions.

In the instant case, the lease requires the landlord to construct a building and parking lot according to plans and specifications approved by the tenant. Pursuant to the lease, defendant approved the general contract and its plans and specifications, as entered into between the landlord and the general contractor, for $557,900.

Regarding the first of these two related issues, the sanitary sewer system, the general contract expressly provided for a "complete" sanitary sewer

system, and thus rebuts plaintiffs' contention that
the contract included only "on site" construction.
Analysis of the site plan clearly illustrates the
bowling alley sanitary sewer system connected by a
six-inch pipe with the public "sanitary sewer"
located in the median strip of Schoolcraft road.
The contract adopted the site plan by requiring
that pipe be laid in locations shown on plans. Fur-
thermore, the contract expressly provided for "san-
itary sewer connections from building to sanitary
sewer as indicated". The only feasible conclusion
from the contract provisions, plans and specifica-
tions is that off-the-premises work entailing con-
struction of a complete and operational sanitary
sewage system under the contract was contemplated
by the parties.[1] There was no credible evidence
from which a reasonable conclusion could be drawn
to support plaintiffs' claim. Therefore, the trial
court should have directed a verdict against plain-
tiffs' claim for payment for the sanitary sewer
extension based upon provisions of the lease, the
contract, and the contract's plans and specifications.

Regarding the second related issue, the storm
sewer extension, the general contract similarly pro-
vided for a "complete storm drainage system". The
site plan together with addendum 2 of the contract
clearly indicates that the storm drainage pipes were
to lead from the premises to a point 10 feet north
of the leased premises,[2] onto plaintiffs-landlords'
adjoining land. Evidence presented by plaintiffs
tending to show that only "on site" piping was in-

[1] While certain additive alternates were addendums to the contract
and entailed additional sewer expense for sewer extensions, when the
contract was submitted, these alternates were omitted from the base
price. Omission of these alternates did not remove the requirement
of the general contract that off-site plumbing be completed.

[2] Addendum 1, while altering the site plan by moving the storm
sewer manhole 29 feet westward, does not change the requirement that
the sewer extend north of the leased premises.

cluded in the general contract contradicts clearly expressed, unambiguous written agreements, and is **not** credible. Testimony consistent with the contract includes testimony by plaintiffs' architect that storm drainage water was to be conducted through **a** pipe to a point outside the leased premises, and from there it was to flow into an open ditch on plaintiffs' adjoining land running north from the leased property to an open-ditch public drain. The architect testified that this was a sufficient and workable plan which was approved by the city of Livonia.

To charge the tenant, the lease requires that expenditures be approved by the tenants and that the cost be attributable to improvement of the premises. The plaintiffs have not produced credible evidence to prove that extension of the storm sewer pipe beyond the point contemplated in the general contract was necessary for improvement of the leased premises. The controversial pipe extension was installed solely on nonleased land. Moreover, the plaintiffs have not provided credible evidence of approval of the expenditure by the tenants. The trial court should have directed a verdict for defendants and against plaintiffs' claim for payment of the storm drainage extension costs.

Defendants' final claim on appeal is that it was error for the trial judge to direct a verdict against their claim for damages because of delay in completion of the bowling center. There is no question that the lease and related documents made no mention of a completion date. However, defendants contend that plaintiffs made distinct oral representations that the building would be ready by July 1, 1960.

Parol evidence is not admissible to show time of performance where a written contract is complete

and unambiguous but does not mention time, because a reasonable time is presumed. *Giffels & Vallet, Inc.* v. *Edw. C. Levy Company* (1953), 337 Mich 177; 30 Am Jur 2d, Evidence, § 1060, p 199. The contract documents in this case were numerous and carefully detailed, and as the trial court observed, the parties were all experienced and had the advice of counsel. It cannot be assumed that they would leave the contract ambiguous if they intended to set a firm completion date. Parol evidence being excluded, no evidence supported defendants' claim. The trial judge properly directed a verdict against it.

Reversed in part and remanded for entry of judgment in conformity with this opinion. No costs, neither party having prevailed in full.

All concurred.