**HOPKINS CONSTRUCTION CO., Inc.,**
**Appellant,**

**v.**

**RELIANCE INSURANCE CO., Inc., and**
**Inlet Company, Inc., Appellees.**

**No. 1088.**

Supreme Court of Alaska.

Sept. 21, 1970.

David B. Ruskin, Anchorage, for appellant.

H. Russel Holland, Anchorage, for appellees.

Before DIMOND, RABINOWITZ, and CONNOR, JJ., and MOODY and OCCHIPINTI, Superior Court Judges.

## OPINION

CONNOR, Justice.

In May, 1964, Hopkins Construction Co., plaintiff-appellant, entered into a contract with Inlet Co., Inc., defendant-appellee, to do the major portion of construction work on the Kodiak Inn, in Kodiak, Alaska. The building was completed March 27, 1965. Reliance Insurance Co. is a surety of Inlet to secure payment for material and labor.

Suit was commenced by Hopkins Construction Co. September 15, 1965, to recover from Reliance $89,980.30 claimed to be due under the surety bond. In an amended complaint, defendant Inlet was also named and the amount prayed for was increased to $133,437.22. In its answer to the amend-

ed complaint Reliance stated as a defense that:

"Defendants allege that plaintiff has failed and neglected to perform its subcontract with Inlet Company, Inc. in accordance with the terms thereof, and that by reason of said neglect and failure, there is no obligation on the part of this defendant to pay any sum of money to plaintiff."

In its third-party complaint against Frank Irick, owner of Kodiak Inn, filed September 1, 1966, Inlet alleged that certain changes ordered by the owner, Irick, had caused delay whereby Inlet was damaged and that Irick had failed to tender progress payments, which failure caused Inlet in turn to default in tendering its payments to Hopkins, thus precipitating this suit. To this third-party complaint Irick answered that some changes in the original plan had been made by Irick and his architect. Irick counterclaimed against Inlet alleging that Inlet had failed to perform certain of its obligations under the contract with Irick. Among other defaults and deficiencies in performance, Irick alleged that the "corridor floors on both the second and third floors are squeaky." Inlet answered this counterclaim by alleging that the changes and modifications instigated by Irick caused delays which increased the cost of performance; that Frank Irick was to perform the earth work and failed to do it in a timely and workmanlike manner and that portions of the work left unperformed were because of failure by Irick to provide sufficient funds. That portion of the suit involving Inlet and Irick was severed. The proceedings in question here concern only Hopkins, Inlet and Reliance.

Trial to the judge without jury commenced November 22, 1966, and on November 30, 1966, was continued until February 27, 1967. In the interim certain interrogatories to defendants were propounded by Hopkins:

*"Interrogatory No. One:* Do the Defendants claim that the construction of the Kodiak Inn so far as applicable to the subcontract between HOPKINS CONSTRUCTION COMPANY and the Defendant, INLET COMPANY, INC. was in any way deficient?

*"Interrogatory No. Two:* If the answer to the above Interrogatory is in the affirmative please state the specific deficiency or deficiencies and the estimated cost to correct or cure said deficiency or deficiencies."

To Interrogatory No. One, Inlet answered "Yes." To Interrogatory No. Two, Inlet answered in part:

"Defendant alleges deficiencies as follows:

(1) Improper nailing and installation of floor plywood. Estimated cost of correction is $18,000.00, plus or minus, dependent upon the extent of carpet installation and replacement."

Judgment was entered on November 12, 1968, under which Hopkins Construction Co. was awarded $39,801.50 less the sum of $15,164.80 as a set-off, plus interest from July 2, 1965. Hopkins was also awarded $21,789.81 for allowable extras, including overhead and profit, plus interest from December 29, 1964.

Hopkins Construction Co. has appealed, claiming that the trial court erred in allowing a set-off to Inlet. We agree with Hopkins that the set-off should not have been allowed.

The case before us raises two important issues: As between Hopkins and Inlet, who has the burden of establishing the facts upon which the set-off is based; and, resolving this, has that burden been met?

BURDEN OF PROOF

It is generally agreed that once substantial performance has been shown, a construction contractor is entitled to recover the contract price, less reasonable costs of remedying the defects in work or

materials.[1] This rule is designed to avoid forfeitures on the part of a contractor or subcontractor who has substantially, if not perfectly, performed his contractual obligations. The rule prevents unjust enrichment by the one procuring the work, who might otherwise point to slight deficiencies, the causes of which are difficult to prove, to avoid payment of the contract price.[2] Application of this rule is consonant with placing the burden of proof on either party.

■ While there is general agreement as to the soundness of the substantial performance rule, consensus as to which party must sustain the burden of proving the recoupment as well as the amount is not so readily available. We realize that there is ample authority to sustain Inlet's claim that Hopkins must bear the burden.[3] We are convinced, however, that the better of the available rules is that which places upon Inlet the burden of establishing its recoupment.[4]

In United States for Use of Acme Maintenance Engineering Co. v. Wunderlich Contracting Co., 228 F.2d 66 (10th Cir. 1955), the court, in a factual setting similar to this one, stated the general rule as follows:

"It is a settled rule that in a subcontractor's action against the contractor, where a substantial performance of the contract is shown, the contractor, in order to avail himself of a set-off, has the burden of proving damages sustained on account of defective work done by the subcontractor." (Citations omitted.) 228 F.2d, at 68.

The practical performance of building contracts can be fraught with some complexity. It may involve various interrelated duties and performances. The determination of whether recoupment should be allowed in a given case may turn on establishing an underlying performance on the part of a person other than the subcontractor or contractor who is seeking recovery. For example, the squeaky floors in the instant case may or may not have been caused by defects in performance of the work which was supervised by Hopkins. The squeaking may have been caused by faults in the earth-moving work attributable to the owner, Irick. These defects may either have caused the under-

---

1. 5 S. Williston, Contracts § 805 at 838 et seq. (3d ed. 1961); 3A A. Corbin, Contracts §§ 700–711 (1960).

   Although the parties and the trial court have referred to Inlet's claim against Hopkins on account of squeaky floors as a "set off," it could more properly be termed a "recoupment." This result follows from the fact that the claim arises out of the same contract as the claim of Hopkins giving rise to this suit, rather than out of some independent dealings with Hopkins. See Restatement of Judgments, ch. 3, Title C, Counterclaim, Recoupment and Set-off, Introductory Note at 217–18 (1942); Gordon v. Great Lakes Bowling Corp., 18 Mich.App. 358, 171 N.W.2d 225 (Mich.App.1969).

2. 5 S. Williston, Contracts § 805 (3d ed. 1961).

3. Todd Shipyards Corp. v. Jasper Elec. Service Co., 414 F.2d 8 (5th Cir. 1969); Graham Const. Co. v. Robert H. Pyle, Inc., 422 S.W.2d 485, 487 (Tex.Civ.App. 1967); Pacific Coast Engineering Co. v. Trinity Const. Co., 410 S.W.2d 797, 800 (Tex.Civ.App.1967); Spence v. Ham, 163 N.Y. 220, 57 N.E. 412 (1900); cf. Fair v. Uhr, 310 S.W.2d 125 (Tex.Civ.App. 1958).

4. 3A A. Corbin, Contracts § 710 at 340–41 (1960); Nathan Const. Co. v. Fenestra, Inc., 409 F.2d 134 (8th Cir. 1969); United States for Use of Maintenance Engineering Co. v. Wunderlich Contracting Co., 228 F.2d 66 (10th Cir. 1955); United States for the Use and Benefit of Browne & Bryan Lumber Co., v. Massachusetts Bonding and Ins. Co., 195 F.Supp. 26 (E.D.N.Y.1961); Burger v. Wood, 446 S.W.2d 436 (Mo.Ct.App.1969); Maloney v. Oak Builders, Inc., 224 So. 2d 161 (La.Ct.App.1969); A. A. Home Improvement Co. v. Irwin, 203 So.2d 888 (La.Ct.App.1967); Silos v. Prindle, 127 Vt. 91, 237 A.2d 694 (1967); Vermont Structural Steel Corp. v. Brickman, 126 Vt. 520, 236 A.2d 658 (1967); De Blasio v. Town of Kittitas, 57 Wash.2d 208, 356 P.2d 606 (1960); Charles A. Burton, Inc. v. Durkee, 162 Ohio St. 433, 123 N. E.2d 432 (1954).

mining of the foundation, or have necessitated the structural alteration of the building which in turn may have weakened it, or allowed the flooring to become damp, in turn causing warping, shrinkage and attendant squeaking.

There are practical considerations which persuade that the burden should rest with Inlet. It was Inlet's responsibility to establish the terms of the project as a whole. Inlet was in a position to inspect and supervise the construction as it progressed. It was within its power to guard against performance which deviated from the plans and specifications. Accordingly, it is not unfair to place on Inlet the burden of proving the cause of particular defects which it claims exist.

Other compelling reasons argue strongly that the burden should fall upon Inlet. Ultimately it is the dissatisfied party who knows best what particular phase of the construction is unsatisfactory to it. It is within its discretion to set forth and explain the defects claimed. It is a much heavier burden for the party claiming a right to the contract price not only to demonstrate substantial performance, but to prove negatively that all defects asserted on defense are attributable to other causes than his own workmanship. Such a burden would, in the instant case and in many similar cases, result in a waste of trial time.

There might be cases in which the facts and contractual relationships require a different allocation of the burden of proof. But we find no reason in this case for departing from the aforementioned rule.

## SUFFICIENCY OF THE EVIDENCE

In order to recover its claim, Inlet had the burden to show (1) that the floors in Kodiak Inn squeaked, (2) that the squeaking was caused by defects in construction attributable to Hopkins, and (3) the extent of damage thereby caused.

The parties are in accord that the floors squeak. They do not agree as to the cause of the squeaking.[5]

In order to determine whether Inlet has sustained its burden of proof, it is necessary to assemble certain of the facts concerning the construction of the building. Kodiak Island Improvement Co. was the owner of Kodiak Inn. This company was essentially the alter ego of Frank Irick. Frank Irick was in charge of excavation for the building. Apparently, during the course of excavation, Irick came upon solid rock and was unable to excavate to the level originally called for in the plans. As a result, certain changes were made in the plans. For instance, two rooms in the motel unit were deleted. There was some testimony that a considerable amount of water ran or stood under the building while it was being constructed. This was described by one witness as a "trout stream." There was also testimony that certain of the piers or plinths under the building had to be made longer because of the change in elevation which was caused by the failure in excavation or by changes made in the elevation of the street following the 1964 earthquake. Certain of these piers were made of wood rather than concrete, possibly to compensate for the additional length made necessary by the previously described condition.

5. It is insufficient to merely show that the floors squeak. In Burger v. Wood, 446 S. W.2d 436 (Mo.Ct.App.1969), concerning cracks in a driveway, it was held: " * * * a mere showing of the existence of fractured areas did not suffice, in and of itself, to establish the affirmative defense of recoupment [citation omitted]; and that, absent any indication that by reason of education or specialized experience either defendant possessed special skill or knowledge with respect to the matter involved so superior as to make his opinion a fact of probative value [citations omitted], neither defendant was qualified to offer opinion evidence as to what had caused the fractured areas." [Citations omitted.] 446 S.W. 2d, at 441.

There is considerable divergence of opinion as to the cause of the squeaking. Bergstrom, project manager and estimator for Inlet at the time of construction, was of the opinion that the squeaking was most likely caused by use of the wrong type of nail in the flooring. He was uncertain as to whether use of wet plywood would produce a similar result. However, at another point, Bergstrom, commenting on one of several deficiencies in construction, refers to the squeaking floors as follows:

"'Plyboard floor squeaks throughout.' This is a failure of Frank Irick to take care of the moisture in there, because that had water setting under the floor. It was two feet deep, continually, all the time, causing a vapor to rise and continually keeping it wet."

Mr. James Ingram, project manager for Inlet, testified that "lack of proper nailing" is usually the cause of squeaking in sub-flooring; that it would require removing some carpet to discover whether this was the cause in the instant case, and admitted that he had not done this. Furthermore, Ingram was not aware of the actual composition of the sub-flooring on the Kodiak Inn project. He did not know how thick the plywood was and did not know how widely spanned the joists were.

Mr. Charles Kuenster, a surveyor called to testify by Inlet, testified that the squeaking could be from any of "a half a dozen" sources. He suggested that defective or improper materials and designs, subsequent earthquakes, settling and shrinkage of wood and foundation work—including the wooden piers—and water running under the foundation, as possible sources of the problem. He also testified that there was some evidence that some nailing had been omitted in the flooring, paneling and carpeting, but indicated that he had only checked a six-inch portion of the flooring in the corner of the lobby and would not conclude from this that nailing of the flooring had been improperly done throughout.

Rod Cherrier, general contractor and an officer of Inlet, testified that the squeaking could be caused by "improper nailing" of the sub-flooring or by the footings under the wooden piers.

Wayne Cherrier, of Inlet, testified that the squeaking was caused by lack of nailing. He indicated, however, that he had never seen the sub-flooring, and that his investigation was made without removing the carpeting.

Joseph Cooksey, a floor covering contractor called by plaintiff, testified that it was his opinion that the floor had not been properly nailed either because the wrong type of nail was used or because it was not driven correctly and that this caused the squeaking. But he indicated that it was possible for other deficiencies in material or construction to cause squeaking, and that it was not his usual business to be acquainted with problems of renailing flooring. Cooksey did not check the bare floor in those rooms which had no carpeting and so far as the record discloses also never inspected under the carpeting to see how the nailing had actually been done. He had only been sent to Kodiak Inn to inspect the condition of the carpeting—not the condition of the sub-flooring. According to Wayne Cherrier, no person has ever torn up a substantial amount of carpet to inspect the condition of the sub-flooring.

The findings of fact below will be reviewed only for a determination as to whether they are clearly erroneous.[6] The trial court's finding of fact is clearly erroneous within the meaning of Civil Rule 52(a) when the reviewing court is con-

---

6. Civ.R. of Proc. 52(a) recites in part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." *See* Ayers v. Day & Night Fuel Co., 451 P.2d 579 (Alaska 1969); Associated Engineers & Contractors, Inc. v. H & W Const. Co., 438 P. 2d 224 (Alaska 1968).

vinced that the trial court was plainly mistaken.[7]

Inlet has failed in several ways to establish its claim against Hopkins. The materials for the project, including nails and plywood for the floor, were supplied by Inlet. The type of nail with which to nail the flooring was specified in the plans. There was no evidence that these nails were not used.[8] There was some testimony to the effect that other types of nails would have been more effective to prevent squeaks, but those types of nails were not called for in the specifications and Hopkins was under no duty to use them. There was some testimony that driving the nails in at a slant might have prevented the squeaking, even considering the type of nail used. However, no witness was able to testify that the nails were not driven at a slant. No witness bothered to notice the manner in which the nails were driven. Assuming that the nails were not driven in this manner, there is insufficient testimony to establish that failure to drive the nails at a slant constituted an unworkmanlike way of doing the job. We are not saying that there is no custom or usage among carpenters to slant-drive 10-penny nails when doing flooring work, to prevent squeaks. We are merely indicating that if any such industry standard exists, Inlet failed to establish it.

There is a lack of evidence to show that the squeaking was caused by defects in portions of the construction which were under the supervision of Hopkins. Without inspecting the floor, the witnesses were only assuming that the squeaking was a result of the carpentry itself. On the other hand, there was evidence to show that the original excavation by Irick had been done improperly; that water stood or ran under the building during and after construction; that the major structural changes took place as a result thereof; that as a result longer piers were used and certain portions of the building were deleted entirely; that water and mud undermined these piers; and that the plywood used for the sub-flooring was subjected to the dampening influence of the "trout stream" under the building.

We are convinced that the trial court's findings of fact were clearly erroneous in attributing the cause of the squeaking to the flooring rather than to other causes which were almost uniformly brought to the court's attention by the various witnesses as possible causes of the squeaking.[9]

We are not saying that the squeaking was not caused by the flooring rather than by the foundation, or changes in structure, or the "trout stream" caused by Irick's earthmoving work. We are holding that the evidence was insufficient to show that the squeaking was caused by a portion of work attributable to Hopkins rather than some defect caused by acts of Irick as had been alleged by Inlet in its answer to Irick's counterclaim. In view of the foregoing the damages issue is not reached.

The judgment is reversed. We remand for the entry of a judgment reflecting an award to Hopkins which is increased by the amount of the recoupment.

---

7. Alaska Placer Co. v. Lee, 445 P.2d 218 (Alaska 1969); Paskvan v. Mesich, 455 P.2d 229 (Alaska 1969); Perkins v. Willacy, 431 P.2d 141 (Alaska 1967).

8. As was said in United States v. Spearin, 248 U.S. 132, 136, 39 S.Ct. 59, 61, 63 L. Ed. 166, 169 (1918): " * * * [I]f the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications." *See* Home Furniture, Inc. v. Brunzell Const. Co.,

84 Nev. 309, 440 P.2d 398 (1968); Gates v. Pickett & Nelson Const. Co., 91 Idaho 836, 432 P.2d 780 (Idaho 1967); *cf.* Helm v. Speith, 298 Ky. 225, 182 S.W.2d 635, 637 (1944), where the contract in question indicated how certain damp proofing was to be done unless it was to be done "in some other manner" to accomplish the intended result.

9. *Cf.* Soderhamn Mach. Mfg. Co. v. Martin Bros. Con. & T. Pr. Corp., 415 F.2d 1058 (9th Cir. 1969); Stanley v. Onetta Boat Works, Inc., 303 F.Supp. 99 (D.Ore.1969).