NEWBURGER, LOEB & CO., INC., as Assignee of Claims of David Buckley and Mary Buckley, Plaintiff-Appellant-Cross-Appellee,

v.

Charles GROSS, Charles H. Gross, Executor of the Last Will of Mabel Bleich, deceased, Gross & Co., and Jeanne Donoghue, Defendants-Appellees-Cross-Appellants,

Newburger, Loeb & Co., a New York Limited Partnership, Andrew M. Newburger, Robert L. Newburger, Richard D. Stern, Walter D. Stern, and Robert L. Stern as Executors of the Estate of Leo Stern, Robert L. Stern, Richard D. Stern, John F. Settel, Harold J. Richards, Sanford Roggenburg, Harry B. Frank and Jerome Tarnoff as Executors of the Estate of Ned D. Frank, Fred Kayne, Robert Muh, Paul Risher, Charles Sloane, Robert S. Persky, Finley, Kumble, Wagner, Heine, Underberg & Grutman, a Partnership (formerly known as Finley, Kumble, Underberg, Persky & Roth and Finley, Kumble, Heine, Underberg & Grutman) and Lawrence J. Berkowitz, Additional Defendants on Counterclaims-Appellants-Cross-Appellees.

Nos. 55 to 59 and 440, Dockets 79–7277, 79–7293, 79–7294, 79–7297, 79–7298 and 79–7300.

United States Court of Appeals, Second Circuit.

Argued Oct. 10, 1979.

Decided Nov. 19, 1979.

**426**

Osmond K. Fraenkel, New York City, for plaintiff-appellant-cross-appellees Newburger, Loeb & Co., Inc., et al.

Philip Mandel, New York City (Golden, Wienshienk & Mandel, New York City, of counsel), for defendants-appellees-cross-appellants Charles Gross, Mabel Bleich, Gross & Co., and Jeanne Donoghue.

Martin London, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, Mark H. Alcott, Beryl A. Schatz, Richard Kurnit, Finley, Kumble, Wagner, Heine & Underberg, Alan M. Gelb, New York City, of counsel), for additional defendant on counterclaims-appellant-cross-appellee Finley, Kumble, Wagner, Heine, Underberg & Grutman.

Paul D. Risher, pro se.

Before LUMBARD, MANSFIELD and MESKILL, Circuit Judges.

LUMBARD, Circuit Judge:

This appeal presents another chapter in the litigation produced by the transformation of the brokerage house of Newburger, Loeb & Co. ("the partnership") into Newburger, Loeb & Co., Inc. ("the corporation") by the promoters of the new corporation and their counsel (hereafter "appellants")[1]

1. This action was originally commenced by the partnership, the corporation, the promoters of the corporation, their counsel and other individuals, who brought suit against Charles Gross on a claim that he "churned" brokerage accounts while at Newburger, Loeb & Co. In

over the objections of a former managing partner, Charles Gross, and two limited partners aligned with him, Mabel Bleich and Jeanne Donoghue (hereafter "appellees"). The facts are reported in our opinion in *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057 (1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978), in which we affirmed the district court's judgment of appellants' liability on Gross' counterclaims for breach of fiduciary duty and civil conspiracy and held that the appropriate measure of damages was "an accounting, indicating the assets and liability of the Partnership, and the capital interest[s] of" Gross, Bleich and Donoghue. The district court's damage award, however, was remanded for recomputation because the district court had (1) accepted certain proposed adjustments to Newburger, Loeb's 1970 financial statements without providing a record that could be reviewed effectively on appeal and (2) included in its award damages for conversion of certain stock warrants (hereafter "the warrants") owned by Gross but kept by him in his capital account with the firm.[2] On remand, Judge Owen made determinations as to each of the proposed adjustments to the 1970 financial statement of the partnership and rejected Gross' argument that he was entitled to recover for conversion of the warrants as part of his recovery for fiduciary breach. He entered judgment for Gross in the sum of $226,780, plus certain interest, and for Bleich and Donoghue in the sum of $76,868.75 each. We affirm all but two of Judge Owen's determinations as to the accounting adjustments and affirm his denial of damages for conversion. As we think that appellees are entitled to recover prejudgment interest on their award, we remand this case once again to the district court for the limited purpose of computing prejudgment interest, and interest upon interest.

■ In our prior opinion, we held that Gross, Bleich and Donoghue were entitled to an accounting of their capital interests in the firm as of February 11, 1971, the date of appellants' wrongful transfer of the assets of the partnership to the corporation. Appellants argue that any accounting performed by the district court should have been conducted on a "liquidating" basis, because, but for appellants' action in making the transfer, the Newburger, Loeb firm would have been forced into liquidation within a matter of days. Further, they call attention to statements in our previous opinion, in which we spoke of the illegal transfer of February 11, 1971 as effecting a "termination" of the partnership and declared that the appellees had been entitled to a "dissolution" of the partnership at that time. 563 F.2d at 1075. If a "liquidating basis" accounting of the Newburger firm were conducted, appellants contend, it would show the capital interests of the general partners to be (as of February 11, 1971) zero, since at that date the liabilities of the partnership exceeded its assets.

We reject appellants' argument on this point. The partnership continued in business after Gross, Bleich and Donoghue withdrew so that Article IX of the partnership agreement, which provided for liquidation if the partnership should end and if no general partners wished to continue the business, never came into play. Moreover, the whole purpose of appellants' wrongful acts in arranging the transfer of assets was to enable Newburger, Loeb to continue doing business—which it did for at least two years after the events in question. A liquidation never occurred.[3] Appellants' arguments depend heavily on confusing the con-

our last opinion, we affirmed the trial court's dismissal of this claim. 563 F.2d at 1069–70. Technically Gross is a counterclaim plaintiff and a cross-appellant as well as a cross-appellee. But since the judgment below is, in its principal respects, favorable to Gross, in the interests of simplicity this opinion refers to Gross, and those aligned with him, as the "plaintiffs" or "appellees"; while the promot-

ers and their counsel, Persky and Finley Kumble et al., are referred to as the "defendants" or the "appellants."

2. *See* pp. 431–432 *infra*.

3. Since December, 1973, however, Newburger, Loeb & Co., Inc. has been involved in a Chapter XI proceeding under the Bankruptcy Act.

cept of "dissolution" with that of a "liquidation" or a "winding up". But New York's Partnership Law, section 60, explicitly prevents such an equivalence: "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."[4]

The argument that the accounting should have been conducted on a "liquidating" basis is the only one raised by appellants that would materially affect the recovery of the limited partners, Bleich and Donoghue. Accordingly, we affirm the district court's award to them of their initial capital investment of $75,000, plus interest to February 11, 1971, as discussed on pp. 432–433 *infra*. In addition, Bleich and Donoghue are entitled to prejudgment interest consistent with our discussion of this subject below.

The remainder of appellants' arguments involve the calculation of the capital interest of Charles Gross in the firm as of February 11, 1971 under Article VIII of the partnership agreement which provided that a withdrawing partner should receive the value of his capital account with the firm. To avoid the necessity of an audit each time a general partner withdrew paragraph 8.1(b) provided that the starting point for the calculation of this partnership interest would be the regularly prepared year-end financials. The departing partner's share of gains or losses realized in the year of his withdrawal was then to be pro-rated and applied to his account according to a formula derived from the relation of the firm's gross income for the year to the date of withdrawal compared to the firm's gross income for the year. The parties stipulated that Gross' share under this formula was 14.21892% of the firm's 1970 gains and losses.

The essence of the dispute is that Gross claims that certain losses and write-offs taken by the firm in its 1970 financials were either taken in bad faith, or incurred after Gross' withdrawal from the firm and so forward-looking in nature that they are not properly attributable to Gross. The partnership articles clearly intended that a withdrawing partner should bear his fair share of any losses for the year of his withdrawal, but could not fairly be read to allow the remaining partners to reduce artificially a departing partner's capital account through the inflation of losses for the year of withdrawal.

■ Appellees presented an expert accountant at trial, Irving Lauterbach, who proposed fifteen alterations (hereafter called the "Lauterbach adjustments") designed to counter the effects of what Gross contends was unfair manipulation of the financials for 1970. Appellants argue that the district court erred in not hearing new evidence on the various Lauterbach adjustments. But in remanding this case two years ago, we explicitly left to the district court's discretion whether or not to reopen the case for new evidence. Moreover, the accounting adjustments as to which appellants desired to submit new expert testimony had been made known to appellants as early as 1975, in appellees' answers to interrogatories. At trial both sides had the opportunity to present expert witnesses on the accounting issues raised in the counterclaim and both sides did so.[5] We conclude that Judge Owen properly exercised his discretion by deciding these matters on the record already made.

■ Appellants also argue that the district court erred in placing the burden of proof upon them to show good faith as to those write-offs challenged by Gross' expert witness Lauterbach. Appellants argue that they met their burden of proof by showing that the 1970 financials were prepared according to "generally accepted accounting

---

4. We give no weight to the assertion of the appellants that in 1971 Gross said he would be satisfied with a "liquidation". Such a statement would not alter his rights under the partnership agreement and New York law.

5. Appellants had presented three expert accounting witnesses at trial.

principles." We think the district court's handling of the burden of proof was correct. We base our decision on the compelling circumstances present in this case. The district court, and this court, found that appellants engaged in a civil conspiracy to breach their fiduciary duties to Gross, Bleich and Donoghue. Upon Gross' withdrawal, control of the firm and its financial record-keeping was in the hands of appellants. The firm's auditors, Peat Marwick, prepared the 1970 financials under explicit instructions for the principals of the new corporation, the appellants. On a number of accounting issues, Peat Marwick could come to no conclusion without an authoritative interpretation from appellants as to the meaning of the terms of the partnership agreement. Under these circumstances, after Gross had established through his expert Lauterbach that a particular accounting decision was questionable, it was entirely proper for Judge Owen to place the ultimate burden on the appellants.[6]

We turn now to the individual Lauterbach adjustments. Most of these involve items charged off as losses by the firm in November and December 1970, the months immediately following Gross' withdrawal, but months in which losses taken by the firm would still be, in part, attributable to Gross because of the pro-rating provisions of Article VIII of the partnership agreement. Some of the adjustments can be dealt with in summary fashion. Item (3) (involving losses on accounts due from a bankrupt firm) and Item (12) (involving Newburger, Loeb's losses in extricating itself from the clearinghouse business) were upheld as appropriate losses by Judge Owen and appellees do not seriously press their cross-appeal on these matters. We affirm. Items 8, 10, 11 and 14 all involved losses as

to which appellants presented no testimony at trial or as to which appellants' witness disclaimed any knowledge. Agreeing as we do with Judge Owen's allocation of the burden of proof, we affirm.

■ Item (1) concerns the treatment of a $411,655[7] payment agreed to in 1970 by Newburger, Loeb for release from a long-term lease. Judge Owen found that this release had been negotiated in good faith, but that it failed the second level of the scrutiny he applied to losses challenged by Gross; that is, its nature was so forward-looking that it was not properly attributable to a withdrawing partner. The purpose of the release was to cut ongoing losses the partnership was experiencing on a lease from Atlas Realty Co. Judge Owen pointed out that an alternative way of handling the problem would have been for the partnership to sublet the realty at a loss; such future losses would not have been chargeable to Gross. While the decision to absorb the full amount of the loss in 1970 may have had legitimate business purposes behind it, we agree with Judge Owen that this action was of such a character that the partnership agreement could not fairly be construed to place upon a withdrawing partner the full brunt of such a decision.

■ Lauterbach adjustment (2) involved a write-off the firm took in 1970 of $152,798 in uncollectible accounts receivable. This write-off was taken in November, 1970, after the firm had already taken $433,042 in write-offs for uncollectibles earlier in the year. Judge Owen apparently thought that $433,042 figure represented the firm's write-offs in previous years.

Normally, faced with such a situation, we would be inclined to remand to the district court for further findings on this point. But this case has now gone on for nearly

---

**6.** Moreover, we note that "generally accepted accounting principles" are designed to be conservative in order to avoid the deception of third party creditors and investors. Thus there is a danger that they might be too conservative when the rights of partners *inter se* are at issue.

**7.** This figure, like all the figures given for the individual Lauterbach adjustments, is the figure of the total loss item as it appeared on the firm's financials. As explained in the text, Gross' share of such items—either as losses reducing his capital account or as disallowed losses increasing his recovery—was slightly more than 14%.

nine years. Moreover, it must be emphasized that as part of the civil conspiracy for which we are calibrating liability in this appeal it has been found that appellants used the threat of protracted litigation to deprive Gross, Bleich and Donoghue of their legal right to large sums of money for a long period of time. It would be manifestly unjust to allow these proceedings to drag on much longer. Indeed, one of the appellants, Mabel Bleich, failed to survive our previous remand. We think there is enough evidence in the record for us to determine that the write-off of $152,798 taken in November, 1970 was not in good faith.[8]

■ Lauterbach adjustment (4) involved the partnership's investment in the franchise of a professional basketball team. In 1970, the firm cut its losses in this disastrous investment by selling the team. Judge Owen found that Gross played a principal role in handling the negotiations surrounding Newburger, Loeb's involvement in the franchise and that since he had been personally liable with regard to the firm's obligations in this matter he benefited substantially from the 1970 agreements. He refused to disallow the $52,124 loss. We agree that this loss was properly charged to Gross.

■ Lauterbach adjustment (5) dealt with the firm's write-off of $34,363 in dividends due but not received within 90 days. Appellees argue that in fact many such dividends were later received. We do not believe that reference should be had to subsequent events except insofar as they support an inference of bad faith. Judge Owen found that the write-off was in accordance with the firm's usual practice over the years and we agree that this establishes its good faith.

■ Lauterbach adjustment (6) involved the sum of $38,220 for year-end bonuses for employees. These bonuses were not of the "Christmas bonus" variety given to office workers but were rather "incentives" given to the firm's professional staff. In light of appellants' own protestations that the firm was on the verge of bankruptcy by February 11, 1971, we agree with Judge Owen that these payments overstepped the bounds of good faith.

■ Lauterbach adjustment (7) involved a $20,000 reserve set up to cover an obligation purportedly due E. F. Hutton & Co. Appellees showed that there were no vouchers, work-papers or other indicia evidencing the existence of this obligation. Appellants did not present evidence to counter this, and Judge Owen, relying on his approach to the burden of proof in this proceeding, awarded judgment on this item to appellees. We affirm.

■ Lauterbach adjustment (9) concerned a reserve of $47,876 set up in response to anticipated future losses in connection with the sports franchise referred to in Lauterbach adjustment (4). Judge Owen disallowed this reserve because the loss recognized and sustained in regard to the franchise involved a final reckoning of the firm's liabilities with regard to the team and an end to any future losses the firm might incur. We affirm on this basis.

■ Lauterbach adjustment (13) represents audit fees for producing the 1970 financials. In the past, Newburger, Loeb had charged off accountants' fees incurred in the previous year only. In 1970, this practice was changed so that accountants' fees were expensed in the year to which they related. Thus in 1970, the year of Gross' withdrawal, the accountants' fees appeared twice—once with regard to 1969 and once with regard to 1970. Appellants argue that it is the better practice to expense accounting fees in the year to which they relate, but in light of the circumstances of this case such a general consideration is less persuasive than the fact that appellants changed their accounting practice at this time and produced an additional $15,000

8. It should be noted that in fact a substantial sum, exceeding $200,000, of the almost $600,-000 in uncollectibles written of in 1970 was eventually recovered by the firm, and there was evidence in the record to support the view that appellants anticipated that a significant portion of the write-offs would be collectible.

expense which could be charged in part to Gross' account. Judge Owen properly disallowed the expense.

■ Lauterbach adjustment (15) differs from the others in that it involves not an attempt by appellants to disallow a loss taken by appellees to Gross' detriment, but rather their challenge to appellants' failure to list an asset which would have raised the value of Gross' account. This asset was the value ($494,156) of certain claims for tax refunds from the state and city of New York. Judge Owen resolved the problem by ruling that Gross would be entitled to his proportionate share (14.21892%) of any recovery secured on these claims at such a time as the recovery occurs, if any recovery occurs. Appellants and appellees join issue on this item with arguments as to the desirability of using a "hindsight" approach versus one that looks solely to the reasonableness of any particular accounting judgment as of the time the judgment was made in 1971. It is clear to us that the question of accounting reasonableness as of 1971 is only one factor in the decision whether or not the financial statement reflected good faith in regard to any particular item. In the case of this item, we cannot say that Judge Owen applied an incorrect legal standard or that the facts developed at trial, on which he relied on remand, were insufficient to support his conclusion. Therefore, we affirm.

■ Appellants argue that the trial court abused its discretion in denying their post-judgment motion to amend the judgment in order to reflect a newly discovered error in Peat Marwick's original 1970 financials. The error arose because Peat Marwick calculated Gross' capital account with respect to the firm's profits and losses in trading securities for its own account on the same basis it used for other items—it took the whole year's results and gave Gross his pro rated share. The partnership articles, however, provided that profits and losses on the firm's trading of securities for its own account were to be treated differently— only profits and losses realized as of the date the partner withdrew were to be charged to his account. This error resulted in an overstatement of Gross' capital account in the original 1970 financials of $21,606. The error was brought to Judge Owen's attention by motion to amend within ten days after his entry of judgment on remand.

Even if, as appellants contend, they believed the issues on remand were limited to dealing with the Lauterbach adjustments alone, this misunderstanding would not explain or excuse their failure to raise the matter of the $21,606 error during the six years of litigation prior to the remand, when it was perfectly clear to all concerned that any or all items making up the total of Gross' capital interest in the firm were in issue. Appellants were in possession of the firm's books and had control of the firm's accountants. The error was theirs. In view of these circumstances we find no abuse of discretion in limiting appellants to issues raised by the Lauterbach adjustments rather than permitting them to reopen all aspects of the partnership capital for recalculation. This is sufficient reason for the district court's ruling, which we affirm.

■ We now return to the question of whether Gross can be compensated in this action for the conversion of his stock warrants. Part of the assets Gross had on deposit with the firm consisted of stock warrants of Geon Industries and of Computer Software Systems, Inc. Newburger, Loeb had received these warrants in connection with underwriting activities on behalf of these clients. In August, 1970, the partnership executive committee voted to vest each of the general partners with a share of the warrants. When, in February, 1971, the appellants caused the illegal transfers underlying liability in this action, these warrants were included among the assets of which Gross was deprived. As one of his initial counterclaims, Gross sued for conversion of these warrants. Judge Owen, in the original trial, took jurisdiction on the theory that the cause of action for conversion was a compulsory counterclaim because it arose from the same facts as Gross' affirmative

defense to appellants' initial claim against him for churning. On appeal, this court held that jurisdiction had been improperly exercised over the conversion counterclaim because there was no logical relation between it and the churning claims. 563 F.2d at 1073. But our opinion explicitly pointed out that it did not foreclose the possibility of Gross' receiving damages for the conversion of the warrants on the theory that the warrants were part of his capital account in the firm and properly includable in an assessment of that account. 563 F.2d at 1081 n.27. We turn now to a consideration of whether or not Judge Owen erred when he decided, on remand, that the warrants were Gross' personal property and were not properly includable in a valuation of Gross' capital accounts, and thus that Gross' remedy for such conversion lies only in the state courts.

We affirm Judge Owen because it is clear on the record that the warrants had become Gross' personal property as of the date of the alleged conversion, February 11, 1971. Although the argument has been made to us that creditors could still reach the warrants and thus that they remained clothed with the aspect of partnership capital, we think the better view is to consider the vesting of rights in the warrants accomplished by the executive committee action of August 11, 1970 as dispositive on this matter. Many assets of the members of a partnership can be reached, under a variety of circumstances, by third party creditors, without transforming the nature of the property from personal property to partnership property. Where, as here, the partnership agreement supplies no clear guide to the nature of the property, we think it best to adopt a common sense approach and treat the warrants as existing solely in their primary aspect as personal property of the individual partners. Gross is, of course, entitled to maintain a suit for conversion in the state courts.

Finally, we turn to the question of prejudgment interest. Any award of prejudgment interest must be divided into two parts: (1) interest running from October 1,

1970 (the date of Gross' effective withdrawal from the firm) through February 11, 1971 (the date of the illegal transfer); and (2) interest running from February 12, 1971, through the date of the entry of judgment. Interest at 10% was awarded on item (1) by Judge Owen on remand.

This award is clearly supported by paragraph 8.3 of the Newburger, Loeb partnership agreement, which calls for the payment of interest on the capital accounts of withdrawn partners which remain on deposit with the firm. Appellants argue that Gross is foreclosed from enjoying an award of such interest because he did not ask for such an award in his prayer for relief, nor did he cross-appeal from Judge Owen's failure to include this item in his initial judgment. On this basis appellants maintain that *Lee v. Joseph Seagram & Sons*, 592 F.2d 39 (2d Cir. 1979) forecloses an award of prejudgment interest.

In *Lee*, judgment for plaintiffs in an antitrust suit was affirmed on appeal and plaintiffs received payment from defendants in satisfaction of the jury award. Two years after the initial verdict had been returned, and a few weeks after it had been affirmed and satisfied, the plaintiffs sought to have their recovery augmented by the addition of prejudgment interest which they had not asked for, argued or raised on appeal. The only motion not time-barred open to the plaintiffs was FRCP 60(a), which has no time limits and applies to corrections of "clerical errors" in judgments. The *Lee* court held that FRCP 60(a) could not be used as a vehicle to secure the recovery of prejudgment interest under the guise of correction of a "clerical error", at least where plaintiffs had not requested such relief and judgment had already been satisfied.

A combination of differing circumstances in *Lee* render it clearly distinguishable from the present case. *Lee* involved a jury verdict, which is subject to less postjudgment reconsideration than the judgment of a trial judge sitting without a jury. Federal Rule of Civil Procedure 59(e). In this case the appellants had not satisfied the money

judgment at the time prejudgment interest was sought to be added, and thus had not invoked the strongest reason behind the principle of repose. In this case, moreover, Judge Owen granted pre-judgment interest sua sponte and thus none of the terms and policies of the Federal Rules of Civil Procedure governing motions by the parties for modifications of the judgment are applicable. Lastly, the district court's original judgment damages here had not—as in *Lee* —been affirmed by the court of appeals, but had been reversed. The parties, when they went back to the district court on remand for a redetermination of damages, had no legitimate expectation that any issue relating to the final award (except, of course, those dealt with by the opinion ordering remand) had been finally decided. The policies of finality and repose that underlie the *Lee* decision are simply not present in these circumstances.[9]

Thus we affirm the district court's decision to award prejudgment interest for the period October 1, 1970 through February 11, 1971. That does not end the matter, however. The district court chose a rate of 10% for the calculation of this interest. Paragraph 8.3 of the partnership agreement provided that the interest rate payable to withdrawn partners could not exceed that allowed by the rules of the New York Stock Exchange. The Exchange, however, has a variety of interest rate ceilings according to how the lender is characterized; if, as appellees argued, Gross should be considered for these purposes as a limited partner, the NYSE ceiling would have been 10.5%;[10] if, as appellants contended, Gross was more like a subordinated lender, the ceiling would have been 8.5%. Because section 8.3 of the partnership agreement specifically provides that a withdrawn general partner in Gross' position should be treated like a subordinated lender, and because the NYSE ceiling on

interest paid to subordinated lenders by brokerage houses at the time in question was 8.5%, we think the district court erred in applying an interest rate higher than 8.5%.

■ Finally, we reach the question of prejudgment interest covering the period from February 12, 1971 to September 1, 1976, when judgment was entered against appellants in the original district court action. Appellees have not asked for such relief at any time during these proceedings, either in this court or below. But we believe an award of prejudgment interest is mandated by the interests of justice on the record before us. We have already recited the fact that appellants have been found to have used the threat of prolonged litigation in order to effect a breach of fiduciary duty, and have noted the length of the proceedings in this case. To avoid allowing the defendants to reap the rewards of their wrongdoing it is essential that interest for this five year period be included in relief.

Of course, such an award must be consistent with state and federal law. New York CPLR 5001(a) leaves the decision to award prejudgment interest to the discretion of the court, when the action is in equity. *Spector v. Mermelstein*, 485 F.2d 474 (2d Cir. 1973). The New York statute is silent on the power of the appellate courts to exercise this discretion in the absence of a ruling by the trial court. But it is clear that appellate courts in New York [11] have the power to grant relief beyond that actually requested, *Costello v. Hoffman*, 30 A.D.2d 530, 291 N.Y.S.2d 116 (App.Div. 1968), or, as it is sometimes stated, have the power to do anything that the trial court might have done. *Terry & Gibson v. Bank of New York & Trust Co.*, 242 App.Div. 699, 273 N.Y.S. 32 (App.Div.1934).

---

9. See also the discussion of *Lee v. Seagram* at p. 434 *infra.*

10. Although in Judge Owen's view the interest could have been set as high at 10.5% under the partnership agreement and the applicable NYSE rule, appellees had agreed to request only 10%.

11. Our discussion of New York state appellate courts and their powers is not meant to extend to the Court of Appeals of New York, whose powers are in some ways more limited than those of the intermediate state appellate courts.

As for federal law, Rule 37 of the Federal Rules of Appellate Procedure governs the award of interest by a court of appeals and reads in pertinent part: "If a judgment is modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with respect to allowance of interest." Although the Advisory Committee notes do not address the question, it seems to us that a grant of prejudgment interest sua sponte is consistent with the broad language of FRAP 37, provided, as well, that such an award is within the court's discretion under the applicable principles of substantive (here, New York) law. Federal Rule of Civil Procedure 54(c) of course makes it clear that the relief available to a plaintiff in federal court is not limited to what he may demand in his complaint or by motion, and it is well-established that federal courts may award prejudgment interest even when it is not demanded in the complaint. *See, e. g., Roth v. Fabrikant Bros.,* 175 F.2d 665 (2d Cir. 1949).

We do not view *Lee v. Joseph Seagram & Sons, supra,* as barring the award of prejudgment interest by a court of appeals sua sponte. To be sure, in *Lee* this court held that the Federal Rules provided no avenue of relief for a party who wished to move for the addition of prejudgment interest after the time for making a motion to amend a judgment had passed. The key difference in the case at bar is that neither of the district court's decisions as to damages has been affirmed on appeal. The question of damages (including interest) has remained open, at least until today. Thus the policies of repose and finality vindicated in *Lee* will not in any way be modified by an award of prejudgment interest in this case.[12]

Affirmed in part, reversed in part, and remanded to the district court for proceedings not inconsistent with this opinion.

---

12. When the district court recomputes the total damages, appellees will be entitled to postjudgment interest on the prejudgment interest discussed above.