SOUTHEASTERN PIPELINE SERVICE, INC., Plaintiff-Appellant,

v.

The CITIZENS AND SOUTHERN BANK OF THOMAS COUNTY, GEORGIA, a Banking Corporation, et al., Defendants-Appellees.

No. 78–2297.

United States Court of Appeals, Fifth Circuit.

May 12, 1980.

Jon S. Rosenberg, Orlando, Fla., for plaintiff-appellant.

Kaplan & Hershner, Robert F. Hershner, Jr., Jerome Kaplan, Macon, Ga., McCollum & Rawlings, Elliott McCollum, Jr., Thomasville, Ga., for Citizens and Southern Bank of Thomas County, Ga.

Before AINSWORTH and HENDERSON, Circuit Judges, and HUNTER,* District Judge.

PER CURIAM:

In this diversity action, Southeastern Pipeline Services, Inc. (Southeastern) instituted suit in the United States District Court for the Northern District of Georgia against the Citizens and Southern Bank of Thomas County, Georgia, and two of the bank's officers, Clifford S. Campbell, Jr., and Delmar J. Conner. On the defendants' motion for a change of venue, the case was transferred to the United States District Court for the Middle District of Georgia. The district court granted summary judgment in favor of the defendants on all four counts of the complaint, and Southeastern appeals. We affirm the summary judgment as to one count, and reverse and remand on the remaining three.

This action centers around a check drawn on the appellee bank and received by Southeastern from National Auction Company (NAC). The check, dated September 20, 1976, was in the amount of $59,435.00 and was signed by Harold G. Cluck, vice president of NAC. Southeastern deposited the check into its account at the Citizens and Southern Bank of Tucker, Georgia, and from there it was transferred in the normal course of business to the appellee bank. In accordance with its usual practice, the appellee bank forwarded the check to its computer center in Albany, Georgia. There, it was charged against NAC's account and posted as paid on October 4, 1976.

The appellee bank subsequently dishonored the check, stamping it "returned not paid, two signatures required." It is undisputed that NAC previously filed with the appellee bank a corporate resolution requiring that its checks bear the signatures of both the vice president, Cluck, and the corporation's president, James A. Shackelford. However, Southeastern challenges the validity of the two-signature requirement, alleging that the appellee bank enforced it in a selective manner, if at all.

On the same day that the check was posted to NAC's account, a bank officer, presumably at NAC's direction, authorized a wire transfer from that account to another payee. The balance in the account was insufficient to cover both the check and the wire transfer. At the time of these transactions, Shackelford, NAC, and related companies owed the appellee bank in excess of $700,000.00 on outstanding loans which were, for the most part, unsecured. Thus, Southeastern contends that the appellee bank, upon determining that there was an overdraft in NAC's account, elected to rely on the two-signature requirement as a means of protecting its own interests. Both NAC and Shackelford subsequently filed petitions in bankruptcy, and Southeastern never received payment for the debt.

Turning to the specific allegations in the complaint, Southeastern asserts in Count I that the check was "finally paid" within the meaning of Georgia's adaptation of the Uniform Commercial Code (UCC), and that, therefore, the appellee bank is liable for the amount of the check. The district court held that the bank was entitled to summary judgment on this count because there was no final payment as a matter of law. Under the relevant provision of Ga. Code Ann. § 109A–4–213, final payment

* United States District Judge of the Western District of Louisiana, sitting by designation.

occurs when the bank completes the process of posting the check to the drawer's account. The term "process of posting" is defined in UCC § 4–109. Although Georgia has not formally adopted § 4–109, we deem it appropriate to look to this section for guidance since it clarifies, rather than changes, the meaning of the UCC. *Accord, Community Bank v. United States National Bank of Oregon*, 276 Or. 471, 555 P.2d 435 (1976). Section 4–109 reads as follows:

> The "process of posting" means the usual procedure followed by a payor bank in determining to pay an item and in recording the payment including one or more of the following or other steps as determined by the bank:
>
> (a) verification of any signature;
>
> (b) ascertaining that sufficient funds are available;
>
> (c) affixing a "paid" or other stamp;
>
> (d) entering a charge or entry to a customer's account;
>
> (e) correcting or reversing an entry or erroneous action with respect to the item.

Hence, a conclusion as to whether the check was finally paid requires a factual determination of the steps comprising the appellee bank's "usual procedure." Although the bank may be in a better position to comprehend its own procedure, the parties' disagreement on this point constitutes a genuine issue of fact which Southeastern is entitled to have resolved by the trier of fact. Fed.R.Civ.P. 56(c). Consequently, the district court erred in granting summary judgment as to Count I.

■ In the second count of the complaint, Southeastern contends that the bank wrongfully dishonored the check because there was not, in fact, a two-signature requirement. The district court properly entered summary judgment in favor of the bank on this count. Under Georgia law, a payee has no cause of action against a payor bank for wrongful dishonor. Rather, the only recourse is against the maker or endorser. *See Stewart v. Citizens & Southern National Bank*, 138 Ga.App. 209, 225 S.E.2d 761 (1976); *Georgia Bank & Trust v. Hadarits*, 111 Ga.App. 195, 141 S.E.2d 172, *rev'd on other grounds*, 221 Ga. 125, 143 S.E.2d 627 (1965). However, to the extent that the existence or non-existence of the two-signature requirement is relevant to the proper resolution of the allegations in Count I, Southeastern should have the opportunity to pursue this factual issue on remand.

■ Count III charges that appellees Campbell and Conner deceived Southeastern by persuading its principal officer, E. L. Myrick, to hold the check for future presentation and by leading him to believe that the check would be paid eventually. The district court reasoned that Southeastern had suffered no damages as a result of the alleged misrepresentations. Although these purported statements admittedly did not create the insufficiency of funds in NAC's account, Southeastern does maintain that other check-holders who acted immediately were able to recover at least part of the amounts owed them by NAC. Thus, the district court improperly granted summary judgment to the appellees as to Count III.

■ Count IV accuses Conner and Campbell of conspiring with Shackelford to defraud Southeastern. The grant of summary judgment on this count is founded on the district court's conclusion that there was no underlying tort on which a conspiracy could be based. Of course, should Southeastern prevail on Count III, an underlying tort will be established. It follows then that the summary judgment must be reversed on this count also.

The summary judgment as to Count II of the complaint is affirmed. Summary judgment on Counts I, III, and IV is reversed, and these counts are remanded for further proceedings.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.