Donald Lee SMITH and Mary Smith, Plaintiffs,

Donald Lee Smith, Plaintiff-Appellant,

v.

BORG–WARNER CORPORATION, Defendant-Appellee.

No. 78–2919.

United States Court of Appeals, Fifth Circuit.

Sept. 22, 1980.

Rehearing Denied Nov. 5, 1980.

Pike Powers, Austin, Tex., Michael L. Baker, Beaumont, Tex., Thomas F. Rugg, Port Arthur, Tex., for plaintiff-appellant.

Mehaffy, Weber, Keith & Gonsoulin, O. J. Weber, Paul J. Holmes, Beaumont, Tex., for defendant-appellee.

Before AINSWORTH and GEE, Circuit Judges, and HUNTER *, District Judge.

GEE, Circuit Judge:

Appellant Donald Lee Smith worked for A. Schulman, Inc. ("Schulman") at the latter's plant in Orange, Texas. On May 21, 1973, Smith was seriously burned in an accident at his work place, and his resulting injuries form the basis for this lawsuit. Smith was in charge of the equipment used by Schulman to "compound" a thermoplastic raw material known as ABS, which is a versatile plastic used in a variety of items, such as telephones, ice chests, and the like. In particular, Smith was compounding ABS 101, a very common commodity-type product that is used in manufacturing black plastic pipe.

The ABS manufacturing process contains three steps. First, a white powder is created by combining certain chemicals. In the second step, the powder is converted, or "compounded," into small rectangular pellets; also, during this stage additives are mixed with the powder to color it and to enhance one or more of its useful characteristics. The plastic pellets are then sold to companies that reheat the pellets and inject the plastic into appropriate molds, completing the manufacturing process.

Appellee Borg-Warner Corporation ("Borg-Warner") had employed Schulman as an "outside compounder" essentially to complete Borg-Warner's portion of the manufacturing process; this contracting-out situation became necessary because Borg-Warner's compounding capacity had been exceeded by the demand for the pellets. Borg-Warner did not sell the ABS powder produced in the first step to Schul-

---

* District Judge of the Western District of Louisiana, sitting by designation.

man, and indeed, Borg-Warner never sells this powder but prefers instead to sell only the pellets to manufacturing concerns. Therefore, Schulman was being paid by Borg-Warner to take over the second step in the manufacturing process, and title to the powder remained with Borg-Warner. Schulman had been compounding the powder into pellets for Borg-Warner since December 1971 and, by the time of Smith's accident in May 1973, had successfully run 21 million pounds of the material through its plant.

On the date of the accident, Smith was engaged in the compounding operation— melting the powder and mixing it with carbon black and other additives and chopping the resulting plastic strip into small rectangular pellets, all done with the aid of certain specialized machinery. At approximately 5:30 p. m. on the date of the accident, a dicing machine did not pull the plastic ribbon from the cooling trough, and the material being compounded began to pile up in the trough as it was leaving the extruder. Smith went to the control board and began turning off switches to shut down the compounding operation. Suddenly an explosion occurred that knocked Smith down and caused the ignition of the ABS. Smith's clothing caught fire, and he sustained serious burns on his body. Smith filed suit against Borg-Warner, but the jury returned a general verdict that found against plaintiff and for defendant. Judgment was entered thereon, and Smith appeals.

Smith advanced several theories of recovery. He claimed that Borg-Warner was strictly liable in tort, alleging that the ABS powder was defectively manufactured; he also asserted a strict liability claim based on defective marketing (i. e., failure to warn of the hazards in the product). In the alternative, Smith claimed that Borg-Warner was negligent, either in its failure to warn him or in its failure adequately to test the product.

Borg-Warner cross appeals, asserting that strict liability is inapplicable on these facts under Texas law and cites us to *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374 (Tex.1978), and *Thate v. Texas & Pacific Railway Co.*, 595 S.W.2d 591 (Tex.Civ.App.—Dallas 1980, no writ). In *Thate* and *Urquidez*, the Texas courts state that strict liability arises only when a product has been released into the stream of commerce and in both cases found this element lacking. While we find much merit in Borg-Warner's argument that the ABS at issue had not entered the stream of commerce, we need not reach this question, since we decide today to uphold the jury's verdict in favor of Borg-Warner on other grounds. *Thate* and *Urquidez* are not squarely on point and apply only by analogy; we prefer to defer to the Texas courts in this unsettled area.

■ Many of plaintiff's contentions on appeal attack the court's charge to the jury. In analyzing such complaints as these on appeal, "the test is not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *Coughlin v. Capital Cement Co.*, 571 F.2d 290, 300 (5th Cir. 1978); *Houston v. Herring*, 562 F.2d 347, 348–49 (5th Cir. 1977); *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1100 (5th Cir. 1973). Our jurisprudence mandates that we consider the charge as a whole, viewing it in the light of the allegations of the complaint, the evidence, and the arguments of counsel. *See Coughlin, supra*, 571 F.2d at 300, and cases collected there. Bearing these principles in mind, we turn now to plaintiff's specific complaints about the charge.

■ First, plaintiff asserts that the court erred in defining "unreasonably dangerous." It is true that a portion of the charge [1] could be interpreted by an attorney

---

1. In the following quote from the jury instructions, we have emphasized the language in question here:

A DEFECTIVE CONDITION is a condition not known or contemplated by the user which is unreasonably dangerous to him. For a product to be UNREASONABLY DAN-

as applicable if a design defect were at issue, which is not the case here.[2] Nevertheless, the portion of the charge quoted in the margin[3] is a tolerably accurate, albeit incomplete,[4] statement of the law in a failure-to-warn case. Perhaps the questioned instruction was given at the wrong place in the charge, but it came *immediately* before the court commenced its particularized charge on failure to warn. Moreover, it covers one sentence only in jury instructions that occupied 45 pages of transcript. We conclude that this sentence, viewed in its worst light, merely gave plaintiff an instruction on an issue for which there was no evidence and cannot fairly be read in context as tending to mislead the jury. The jury was told in other portions of the charge that plaintiff claimed to have been injured by reason of a manufacturing defect (*i. e.*, a flaw in the product). In other words, one of plaintiff's contentions was that Borg-Warner had produced a "bad batch" of ABS powder. The trial court

GEROUS it must be more dangerous than would be contemplated by the ordinary user with the ordinary knowledge common to the community of foreseeable users as to its characteristics or use.

Further, to be UNREASONABLY DANGEROUS a product must create an unreasonable risk of harm to the ordinary user when the product is used in a manner which can be reasonably foreseen and anticipated by the manufacturer of the product.

*Further, the degree of danger in the ordinary use of a product must be so great that an ordinarily prudent manufacturer having knowledge of such risk or danger would not undertake to manufacture such product.*

The Court further will instruct you that a product may be defective because of the failure of a manufacturer to give timely and adequate warning about the use of the product if said product was unreasonably dangerous.

2. Not only was there no design defect at issue below, the "prudent manufacturer" language of the charge was later rejected by the Texas Supreme Court as inapplicable in design cases. *See Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979).

3. *See* n.1, *supra*.

4. The preferred language is to be found in *Hagans v. Oliver Machinery Co.*, 576 F.2d 97, 101 (5th Cir. 1978):

inserted the words "unreasonably dangerous" primarily to guard against the possibility that the jury might find for plaintiff if it merely found the ABS powder to be thermally unstable, since there was overwhelming evidence that, in varying degrees, *all* such powders are unstable, and since plaintiff had made no contention that all such powders were, per se, unreasonably dangerous.

■ Plaintiff next complains of that portion of the charge in which the court outlined the elements of a strict liability case based on a flaw in the product. In particular, plaintiff contends that the jury should not have been told that he had to prove the existence of a defect at the time of the injury. Again, while this may have been erroneous,[5] we do not believe, in light of *Coughlin, supra*, and our other cases, that this misstep by the trial court rises to the level of reversible error. Just before the allegedly erroneous instruction, the trial court had told the jury that

A product is unreasonably dangerous and, therefore, defective if the ordinary man knowing the risks and dangers involved in its use, would not have marketed the product without "supplying warnings as to the risks and dangers involved in using the product as well as instructions as to how to avoid those risks and dangers."

*See also Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602, 605 (Tex.1972).

5. We quote and emphasize here the section of the charge at issue:

The plaintiff is required to prove the following by a preponderance of the evidence:

Number one, the existence of a defect in the product at the time it left the control of the manufacturer that made it unreasonably dangerous when used.

Second, the plaintiff must further prove by a preponderance of the evidence that such defect in the product was a producing cause of the injury and damages sustained by him.

*Further, that the product in question was defective at the time of the injury.*

(emphasis added). It would have been preferable to require the jury to find, in place of the emphasized language, that the product reached the user without substantial change in its condition. *See Restatement (2d) of Torts* § 402A; *see also Abbott Laboratories v. Gravis*, 470 S.W.2d 639, 643 (Tex.1971).

one engaged in the business of manufacturing or selling a product who sells such product in a defective condition which is unreasonably dangerous to the user is subject to liability for physical harm thereby caused by the use of the product if the product is a producing cause of the injuries complained of and *reaches the user without substantial change in the condition in which it leaves the hands of the manufacturer.*

(emphasis added). Additionally, the court told the jury that a fact may be established by circumstantial evidence and that the jury could draw reasonable inferences from the evidence before it. In light of the foregoing, we do not accept plaintiff's argument that the questioned sentence in the charge placed an impossible burden on plaintiff to prove by *direct* evidence that the defect still existed in the product at the time of the accident.

■ Plaintiff next asserts that the court's use of the term "unreasonably dangerous" in the portion of the charge dealing with the negligence issues fatally misled the jury. However, plaintiff's timely complaints about this language caused the judge to call the jury back in after it had begun deliberations and to give a clarifying charge in which it told the jury that the term "unreasonably dangerous" applied to the strict liability claims of the plaintiff. In light of the evidence, the closing arguments, and the clarifying charge, we think the jury instructions gave sufficient guidance and were not misleading.

■ Another allegation of error concerns the court's charge on Borg-Warner's duty to warn. The court told the jury that it might take into account the experience of Schulman's personnel in handling ABS powders.[6] Plaintiff contends that the language used *required* the jury to find that Schulman and its personnel were expert in compounding plastics. However, we believe that the charge in question did no more than tell the jury that they might consider the uncontroverted evidence that Schulman and its employees had some experience in handling chemicals of this kind. The court's charge was proper in light of our holding in *Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457 (5th Cir. 1976).

■ The portion of the charge dealing with circumstantial evidence is also alleged to be in error. Specifically, plaintiff contends that the court erred in not giving his requested charge on *res ipsa loquitur.* We find the court's instructions on circumstantial evidence to be substantially correct. Furthermore, plaintiff's counsel in closing argument read the omitted instruction to the jury. We can find no error.

Plaintiff's other complaints about the charge are even less persuasive than those just discussed. In summary, we find that the charge passes muster when tested by the principles laid down by our court in cases such as *Coughlin, supra,* and did not inject reversible error into the case.

Plaintiff's other contentions on appeal, which deal primarily with evidentiary points, also fail to convince us that the result of this trial should be reversed. Nor are we willing to overturn the court's denial

---

**6.** Specifically, the trial judge said:

> You are instructed that in considering whether any warning was required and, if so, whether any warning that may have been given was adequate, you may take into account that A. Schulman and its personnel at Orange were accustomed to compounding powder, including ABS, and had expertise in the characteristics of such powders and the precautions required in compounding and handling them.
>
> Therefore, you are instructed that if, by virtue of the experience, training and expertise of A. Schulman and Donald Smith, you should find from a preponderance of the evidence that there was no requirement to give them a warning concerning the handling and compounding of ABS, or if you should find from a preponderance of the evidence that such warning as you may conclude was given was adequate or if you should find that no warning was given but that facts would not have changed the manner in which A. Schulman compounded the ABS and would not have prevented Donald Lee Smith's injury, then you will find for the defendant and against the plaintiff's contention on the question of warning under the product liability theory.

of plaintiff's motion for a new trial. Therefore, the judgment below is AFFIRMED.