**CONSOLIDATED CIGAR COMPANY, Etc., Plaintiff-Appellee, Cross-Appellant,**

v.

**TEXAS COMMERCE BANK (Formerly Pan American Bank), Defendant-Appellant, Cross-Appellee.**

No. 83–2426.

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1985.

Randall, Circuit Judge, dissented and filed opinion.

John C. Nabors, Robert D. Remy, Joseph W. Higgs, Jr., John K. Schwartz, Houston, Tex., for defendant-appellant, cross-appellee.

Ewers, Toothaker, Ewers, Abbott, Talbot, Hamilton & Jarvis, Neil Norquest, McAllen, Tex., for plaintiff-appellee, cross-appellant.

Before WISDOM, RANDALL, and JOLLY, Circuit Judges.

WISDOM, Circuit Judge:

## I. FACTS AND PROCEEDINGS BELOW

The plaintiff-appellee, Consolidated Cigar Company ("Consolidated"), received three checks from Eli Witt Company totalling more than $780,000. Consolidated deposited these checks in its own demand deposit account, and its bank forwarded the checks for collection to Eli Witt's bank, the Texas Commerce Bank at Brownsville ("Commerce Bank"). Commerce Bank received the first of these checks on June 26, 1979, and processed and posted the draft. On June 27, 1979, Commerce Bank received the other two checks, which totalled approximately $750,000. This litigation concerns whether Commerce Bank had also processed and posted these two checks before it returned them.

Commerce Bank alleges that in the summer of 1979 the Bank began to experience

"problems" with the Eli Witt account, and Commerce Bank's president, John Kaszynski, determined that his staff should prepare a daily report on the account's "uncollected funds". This uncollected funds position reflected deposits that had not actually been collected from the banks upon which the deposits were drawn. The uncollected funds position would be important if, as later happened, companies that had written checks to Eli Witt's account dishonored them when Texas Commerce presented them for payment.

Mr. Kaszynski, who had sole responsibility for the Eli Witt account, reviewed the uncollected funds report daily. The Bank alleged that this review routinely took place between 1:00 and 2:00 p.m. Although Eli Witt periodically wrote checks that were covered only by uncollected deposits, the Bank on each occasion decided to pay the checks.

At about 1:30 p.m. on June 28, 1979, Mr. Kaszynski received a telephone call from a director of Texas Commerce, who said that Eli Witt was experiencing "financial problems". After receiving the telephone call, Mr. Kaszynski examined the uncollected funds report for that day and decided that the Eli Witt account was in a "serious uncollected funds position". Mr. Kaszynski instructed an officer in charge of bookkeeping and check processing to retrieve any checks drawn on the Eli Witt account that were being processed that day and deliver them to him.

Up to the time of the retrieval of the checks by the bookkeeping officer, the two checks payable to Consolidated were processed with other checks. Texas Commerce had received the two checks in a cash letter from the Federal Reserve Bank of San Antonio on June 27, 1979. The checks then went to the Bank's data center, where a computer read encoded informa-tion on each of the checks. The computer updated the Eli Witt account, entered the two withdrawals as part of the uncollected funds balance that would appear on Mr. Kaszynski's desk the following day, and placed the checks in sequential order by account number. The checks then went to the bookkeeping department of the Bank the following morning. That department fed the checks into a machine that simultaneously microfilmed the checks and stamped "paid" on the face of each of the checks. These checks went to the check filers, who examined the checks for authorized signatures, post-dated items, altered dates, altered amounts, special account instructions or warnings, stop payment orders, or any other irregularity. After this examination, the filers placed each check in the customer's check file.

In the instant case, the two checks were with the check filers when the bookkeeping officer retrieved them. The parties dispute whether the filers had placed the two checks in Eli Witt's check file, or even whether any significance should be accorded such filing. In any event, Texas Commerce returned as unpaid not only the two checks that had been processed that day but also the earlier check, which the Bank indisputedly had posted the day before.

## II. DISCUSSION

### A. The District Court's Instructions to the Jury

Under the Texas Commercial Code, a bank can refuse collection on checks presented for payment any time before the completion of the bank's posting of the check or before midnight of the working day following the receipt of the items, which ever is the earlier. Tex.Bus. & Comm.Code § 4.109.[1] The parties concede that if Texas Commerce had completed

---

1. Section 4.109 provides:

    "The 'process of posting' means the usual procedure followed by a payor bank in determining to pay an item and in recording the payment including one or more of the following or other steps as determined by the bank:
    "(1) verification of any signature;

    "(2) ascertaining that sufficient funds are available;
    "(3) affixing a 'paid' or other stamp;
    "(4) entering a charge or entry to a customer's account;
    "(5) correcting or reversing an entry or erroneous action with respect to the item."

posting, the return of the checks was improper and the bank must honor the checks. At trial, the main issue was whether the Bank had posted the two dishonored checks before the bookkeeping officer retrieved them. Consolidated argued that the filing of the checks constituted the last stage of processing; that these two checks were in fact filed before the officer retrieved them; and that "posting", as defined in section 4.109, was therefore complete.

■ Texas Commerce countered that section 4.109 recognizes two aspects of posting a check: a mechanical processing and a discretionary, or decisional, review of those materials after batch processing of the day's collection presentation. Texas Commerce argued both at trial and on appeal that the physical path of the check through the bank facilities is therefore only a partial indication of whether an item has been posted. Although a bank is usually in the best position to understand and to describe its own procedure, the disagreement on this issue is a genuine issue of fact to be resolved by the jury. *See Southeastern Pipeline Service, Inc. v. Citizens & Southern Bank*, 5 Cir.1980, 617 F.2d 67, 69. Here, a conclusion as to whether the check was posted requires a factual determination of the steps comprising the defendant's usual procedures for posting checks in accounts with large uncollected funds.

On appeal, the Bank contends that the district court's instructions impermissibly over-simplified the factual questions and led the jury to conclude that if the checks had been filed, then the Bank had processed the checks within the meaning of section 4.109. The pertinent part of the judge's instructions are set forth in the margin.[2]

---

**2.** The trial judge charged the jury:

"Perhaps it will be best for me to start out talking about this case in this manner. Discussing the verdict form. Do not take anything I tell you about the verdict or about this case without considering everything I have told you, because I am going to try to simplify it for you and it may be an oversimplification and may not be fair. You consider everything I have said and remember that the law that governs your answer to the verdict, because there is only one question going to be asked of you, is in this two-page sheet—in these two sheets of paper.

"What do you have here? You have plaintiff and you have defendant. And plaintiff is basically coming to you and saying to you or alleges and contends that, in effect, that check that came into the Pan American Bank, and now Texas Commerce Bank, had already been, let us say for our purposes, completely and totally processed. And if you believe from the evidence that it had been totally and completely processed, which means—I think everybody agreed to that but you take it the way the law is and the way you remember it—that it was already filed, then the bank is subject to paying that. That, simply speaking, is what is before you.

"The bank says, on the other hand, not so. We never completed processing that, under our procedures and as the law requires before we have to pay it. As a matter of fact, it was never filed.

"And that's the position of both parties. What you are being asked from this verdict is a very simple question. It is really being asked—asking you to find from a preponderance of the evidence—remember what that was—that the items in question—the items in question are the two checks—were finally paid by the processing—by the computer processing of posting, as I am going to completely define to you, before the bank returned the checks.

"If you are satisfied from the preponderance of the evidence that the entire processing of posting had already been concluded, and that check was already in that file drawer, those two checks were in that file drawer, then you should answer that question "Yes." But if you are not so satisfied by a preponderance of the evidence, then you should answer that question "No."

Trial transcript at 409–11. The written instructions read:

"Members of the jury, as you are aware after hearing the evidence, the Plaintiff is seeking to recover the amount of 2 checks which were issued to the Plaintiff by the Eli Witt Company on its account at Texas Commerce Bank-Brownsville formerly known as Pan American Bank. You are instructed that Texas Commerce Bank-Brownsville was acting in the capacity as a payor bank in connection with the two checks in question. A payor bank is a bank by which an item is payable as drawn or accepted. You are further instructed that the two checks in question are items. An item means any instrument for the payment of money even though it is not negotiable but does not include money.

"The Plaintiff has the burden of establishing by a preponderance of the evidence that each

■ Texas Commerce correctly points out that whether the checks had been filed is only an indication of whether they had been posted: It was the jury's duty to determine whether filing actually constituted the end of the processing or whether there were additional steps to be taken before an item could be considered posted. If the district court's instructions created in the jury's mind the impression that a filing of the check was the end of processing at Texas Commerce, and thus tantamount to a posting, then the district judge improperly resolved a question of fact that was for the jury's exclusive determination.

■ In assessing Texas Commerce's challenge to the jury instruction, "the test is not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of those issues and its duty to determine those issues". *Smith v. Borg-Warner Corp.*, 5 Cir.1980, 626 F.2d 384, 386. If the charge leaves the reviewing court with "substantial and ineradicable doubt as to whether the jury has been properly guided in its deliberations", it cannot stand. *Martin v. City of New Orleans*, 5 Cir.1982, 678 F.2d 1321, 1325.

■ Applying these standards to the challenged instructions, we find that the district court's instructions were adequate to inform the jury of its duty. Throughout the trial there was substantial conflict over not only whether the two returned checks had been filed but also whether a "decisional" phase of the check processing was complete. Counsels' closing remarks placed special emphasis on this question. It is safe to assume that both issues were in the front of jurors' minds. *See Coughlin v. Capitol Cement Co.*, 5 Cir.1978, 571 F.2d 290, 300, holding that in assessing instructions to jury the court must also consider pleadings, evidence, and arguments of counsel. Finally, in giving the verdict instruction, the judge charged: "If you are satisfied from the preponderance of the evidence that the *entire processing of posting had already been concluded*, and that check was already in the file drawer, that those two checks were in that file drawer, then you should [return a verdict for the plaintiff]" (emphasis added). We conclude that this charge and the charges as a whole sufficiently instructed the jurors that they were to determine, first, whether filing was the last step in posting a check and, second, whether the check had been filed. The instructions specifically require the jury to make a determination not only of whether the check was in the file drawer, but also of whether the process of posting was complete. The written instructions expressly mentioned "ascertaining that sufficient funds are available", which adequately encompasses the extra decisional step the Bank elected to take for accounts with uncollected funds reports.

■ The Bank's allegation of error because of the district court's refusal to propound special interrogatories to the jury is also without merit. If a trial judge's charges are adequate, he is under no obli-

---

check in question was finally paid by the bank. An item is finally paid by a payor bank when the bank has completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith. You are instructed that the "process of posting" means the usual procedure followed by a payor bank in determining to pay an item and in recording the payment including one or more of the following or other steps as determined by the bank:

"1) verification of any signature;

"2) ascertaining that sufficient funds are available;

"3) affixing a 'paid' or other stamp;

"4) entering a charge or entry to a customer's account;

"5) correcting or reversing an entry or erroneous action with respect to the item."

Trial transcript at 409–13.

After giving his instructions, the trial judge submitted to the jury a single interrogatory:

"Do you find from a preponderance of the evidence that the items in question, which were the two checks, were finally paid by the completed process of posting (as defined to you in the court's charge) prior to the time that the bank decided to return the checks.

Answer 'Yes' or 'No'."

The jury answered "Yes".

gation to accept a party's recommendations or proposed interrogatories. *See Chemetron Corp. v. Business Funds, Inc.,* 5 Cir. 1982, 682 F.2d 1149, 1171; *Miley v. Oppenheimer Co.,* 5 Cir.1981, 637 F.2d 318, 334.

### B. Prejudgment Interest

On cross appeal, Consolidated Cigar contends that the district court erred in denying prejudgment interest. In its order, the court said:

> "Pan American Bank [Texas Commerce Bank] contends that Consolidated Cigar Co. is not entitled, as a matter of law, to pre-judgment interest for failing to plead the same. Consolidated responds to this contention by stating that pre-judgment interest was recoverable upon its general prayer for relief under Tex.Rev.Civ.Stat.Ann. Art. 5069–1.03 (Vernon Supp.1981). The Court finds such a contention to be erroneous and refuses to extend the coverage of Art. 5069–1.03 to these facts where Consolidated is clearly seeking interest as damages."

On appeal, Consolidated Cigar has argued that the adequacy of its pleadings are to be measured under federal rather than state law.[3] Federal courts have recognized that while the substantive questions of entitlement to interest and the rates of interest are to be resolved by the applicable state law, the adequacy of a plaintiff's pleadings must be resolved by reference to Fed.R.Civ.P. 54(c) and cases construing it. *Newburger, Loeb & Co. v. Gross,* 2 Cir. 1979, 611 F.2d 423; *Soderhamn Machine Mfg. Co. v. Martin Bros. Container & Timber Corp.,* 9 Cir.1969, 415 F.2d 1058; *Frigiquip Corp. v. Parker-Hannifin Corp.,* W.D.Okla.1977, 75 F.R.D. 605. These decisions have held that "in diversity cases, it is not necessary for the plaintiff's pleadings to contain a prayer or other request for pre-judgment interest". *Newburger,* 611 F.2d at 434; *Soderhamn,* 415

F.2d at 1064; *Frigiquip,* 75 F.R.D. at 610. In the instant case, Consolidated's prayer for relief is adequate under the federal rules.

The Bank alleges that the district court's order was based on the alternative ground that Texas substantive law would not afford Consolidated the right to prejudgment interest. The Bank argues that Consolidated is not entitled to prejudgment interest because such an award would be "inconsistent" with its prayer for "interest on the total final judgment". The Bank cites two cases for the proposition that federal and state courts will not award prejudgment interest where the plaintiff has submitted a prayer for relief that is inconsistent with the plaintiff's specific request for interest. In *Steffen v. United States,* 6 Cir.1954, 213 F.2d 266, 272, the court held: "While a prayer for general relief may be sufficient to sustain an award of interest not specifically prayed for [citation omitted], it is not sufficient to sustain an award inconsistent with that specifically prayed for." In *Steffen,* however, the plaintiff had asked for prejudgment interest, but from a different date from that from which it was eventually awarded. *Steffen* is therefore inapposite.

■ In *Tennessee Life Insurance Co. v. Nelson,* Tex.Civ.App.1970, 459 S.W.2d 450, 454, a Texas court refused to award prejudgment interest where the plaintiff submitted a prayer for "interest on the amount of the judgment at the legal rate until paid". The *Nelson* court held that an award of prejudgment interest would be inconsistent with the specific relief sought and therefore denied the plaintiff's motion. Texas Commerce would have us hold Consolidated's prayer for "interest on the total final judgment" to be analogous to the prayer in *Nelson* and deny pre-judgment interest. In *Nelson,* however, the court merely held that if there is a requirement

---

**3.** The district court may have erred in holding that Consolidated's award for the amount of the refused checks did not fall within Tex.Ann. Civ.St. Art. 5069–1.03. *See Pecos County State Bank v. El Paso Livestock Auction Co.,* Tex.Civ.

App.1979, 586 S.W.2d 183 (sight draft held within Art. 5069.103). We do not reach this question, however, because we find the prayer for relief adequate under Fed.R.Civ.P. 54(c).

that the complainant specifically plead for prejudgment interest, a prayer for general relief will not satisfy that requirement if the pleadings also contain a specific prayer for a different kind of interest. This line of reasoning is inapplicable under the Federal Rules because there is no requirement for a specific pleading for prejudgment interest.

■ Even if this line of cases were applicable, we would find the Texas Supreme Court case of *Black Lake Pipe Line Co. v. Union Construction Co.*, Tex.1976, 538 S.W.2d 80, to be controlling. In *Black Lake*, the Texas Supreme Court held that contractors' prayers for damages "with interest" constituted sufficient pleading to support an award for prejudgment interest: "If, as in the instant case, there is no controversy about the date of the injury or loss, the plaintiff's right to prejudgment interest does not depend upon the resolution of any fact issues. Consequently, a simple prayer for interest provides fair notice of the claim for relief." *Id.* at 96. Consolidated's prayer for "interest on the total final judgment" seems indistinguishable from the pleadings held to be adequate in *Black Lake*.

We have considered all of the issues the parties have raised in this litigation, but we have limited this opinion to a discussion of those issues we regard as meriting discussion. We hold that the district court erred in denying Consolidated's motion for prejudgment interest and REVERSE its order denying that interest. In all other respects the district court's judgment is

AFFIRMED.

RANDALL, Circuit Judge, dissenting:

I respectfully dissent.

One of the material factual issues in this case, for the jury to decide, is the nature of the bank's actual process of posting. The district court's written instructions on the "process of posting" are correct because they expressly mention that the process means the "usual procedure" followed by the bank including (if the bank determines to include in that procedure) ascertaining that sufficient funds are available. The court's oral charge, however, conflicts with the written instructions. While the panel opinion, in text, cites one sentence from the oral charge, the full charge (set out in note 2 of the panel opinion) makes clear that the district court did, in fact, resolve a question of fact that was for the jury, not just once but several times:

Perhaps it will be best for me to start out talking about this case in this manner. Discussing the verdict form. Do not take anything I tell you about the verdict or about this case without considering everything I have told you, because I am going to try to simplify it for you and it may be an oversimplification and may not be fair. You consider everything I have said and remember that the law that governs your answer to the verdict, because there is only one question going to be asked of you, is in this two-page sheet—in these two sheets of paper.

What do you have here? You have plaintiff and you have defendant. And plaintiff is basically coming to you and saying to you or alleges and contends that, in effect, that check came into the Pan American Bank, and now Texas Commerce Bank, had already been, let us say for our purposes, completely and totally processed. And *if you believe from the evidence that it had been totally and completely processed, which means—I think everybody agreed to that but you take it the way the law is and the way you remember it—that it was already filed, then the bank is subject to paying that.* That, simply speaking, is what is before you.

*The bank says*, on the other hand, not so. *We never completed processing that, under our procedures and as the law requires before we have to pay it. As a matter of fact, it was never filed.*

And that's the position of both parties. What you are being asked from this verdict is a very simple question. It is really being asked—asking to find from a preponderance of the evidence—remem-

ber what that was—that the items in question—the items in question are two checks—were finally paid by the processing—by the computer processing of posting, as I am going to completely define to you, before the bank returned the checks.

*If you are satisfied* from the preponderance of the evidence *that the entire processing of posting had already been concluded, and that check was already in that file drawer, those two checks were in that file drawer,* then you should answer that question "Yes." But if you are not so satisfied by a preponderance of the evidence, then you should answer that question "No." (Emphasis added.)

In summary, under the oral instructions, "completely processed ... means ... that it was already filed." That constitutes a resolution by the district judge of a material factual issue in the case. Because the oral and written instructions are contradictory and confusing, I would reverse and remand for a new trial.